UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

*Filed electronically*

| | |
|---|---|
| SANDRA JOHNSON, as )<br>   Administrator of the ESTATE OF )<br>   RAYMOND L. JOHNSON, Deceased, )<br>)<br>*Plaintiff* )<br>)<br>)<br>)<br>CHRISTIAN COUNTY FISCAL COURT, )<br>*et al.,* ) | Case No. 5:11-cv-102-R |

**PLAINTIFF'S RESPONSE
TO DEFENDANTS' MOTION TO STRIKE**

Plaintiff Sandra Johnson brought this action under 42 U.S.C. § 1983 for violation of civil rights causing the wrongful death of her brother, Raymond L. Johnson. While he was at the Christian County Jail, the showed deliberate indifference to his medical needs and failed to provide him proper medical care, causing his physical decline, suffering and death.

The plaintiff named as parties the Jailer, Bradley L. Boyd, as well as the Christian County Jail and the Christian County Fiscal Court. In keeping with the requirements for pleading a claim against a municipality under *Monell v. New York City Department of Social Services*, the plaintiff cited nine other recent cases in which the defendants' deliberate indifference has caused the death of other prisoners. *Monell*, and this Court, require such pleading of a "pattern and practice" to support municipal liability under Section 1983.

The defendants' motion misunderstands the plaintiff's pleading requirements, and it should be denied.

Background

On or about August 6, 2009, Hopkinsville Police Department arrested Mr. Johnson on an outstanding felony warrant and transported him to the Jail. (Complaint, ¶13). During the booking process at the Jail, Mr. Johnson advised the Jail's staff that he had a serious medical condition, specifically, Crohn's disease; that he was taking several prescription medications that he needed to continue to take; and that he had recently been hospitalized for kidney stones. (Complaint, ¶15). He soon began exhibiting clear and obvious signs and symptoms of complications with his medical conditions, and his physical and medical condition deteriorated dramatically. (Complaint, ¶¶ 16-17).

The Jail and its officers, jailer, doctors and staff acted with deliberate indifference to Mr. Johnson's medical needs, however, and they failed to take the necessary and appropriate steps to treat Mr. Johnson's physical and medical condition. Getting no response from the guards, Mr. Johnson wrote directly to Boyd several times about the lack of medical and inability to take his medicine. (Complaint, ¶¶ 19-21). He received no response.

On or about March 2, 2010, Mr. Johnson began experiencing chest pains and notified medical staff. Two weeks later, Mr. Johnson complained about his hands drawing up and going numb to medical staff. He again complained of chest pains and muscle cramps on April 14, 2010, May 17, 2010, May 18, 2010, and May 20, 2010. Mr. Johnson was finally transported to Jennie Stuart Medical Center on May 25, 2010, after being found lying on the ground in vomit, an overall poor appearance, and complaints of muscle cramps, nausea, diarrhea, for several days. He was admitted and treated at Jennie Stuart Medical Center for dehydration, low potassium, and food poisoning until May 28, 2010. (Complaint, ¶22).

On or about June 4, 2010, after days of Mr. Johnson complaining of chest pains, difficulty breathing, nausea, vomiting blood, and abdominal pain, he was finally transported to Jennie Stuart Medical Center where he was admitted and later died on June 15, 2010, from complications of his untreated medical conditions while in care, custody and control of the Jail and its officers, doctors and staff. (Complaint, ¶¶ 24).

As the Complaint makes clear, Mr. Johnson is not the only person to suffer lack of medical care at the Jail. The Defendants' mistreatment of Mr. Johnson was not unusual, but was part of a continuing pattern, custom and practice of the Defendants of willfully and deliberately ignoring the medical needs of inmates of the Jail. In fact, Mr. Johnson's death is only 1 of 10 inmates who have died in recent years while in custody at Christian County Jail.

For example, one inmate, Robbie Jenkins, died on January 13, 2004, from complications of pneumonia after having been arrested and transported to Christian County Jail on January 1, 2004. Jenkins fell ill to what she believed was a chest cold and advised jail personnel about her illness and that she was having difficulty breathing. Instead of seeking medical attention for Jenkins, jail personnel put her in segregation and denied her medical care. Jenkins condition deteriorated in such way that fellow inmates repeatedly called upon jail personnel to get medical care for Jenkins. Jail personnel observed Jenkins having difficulty breathing and were advised by Jenkins' fellow inmate that Jenkins had been crying for help and was unable to get out of bed. Again, jail personnel transferred Jenkins to a separate cell for medical watch and failed to seek medical care for Jenkins. (Complaint, ¶¶ 26-27).

It was only after observing Jenkins lying on a mat for over several hours did jail personnel finally seek medical care and transferred her to Jennie Stuart Medical Center for treatment on January 12, 2004. By that time, Jenkins condition had deteriorated to such a degree that she began to suffer from multiple organ failure and subsequently died. (Complaint, ¶27). On another

3

occasion, on or about December 2008, Robert Kendrick, an inmate with known and documented mental health issues died while in the custody of Christian County Jail after being denied for over three weeks medication for treatment of his mental illness. (Complaint, ¶28). Other inmates who have died while in custody in Christian County Jail include Michael Robinson, Lawrence Singleton, Tony Cornelius, Terry Weatherford, Corey Forte, Peter Hartman, and William Ray Bowling. (Complaint, ¶28).

In addition to deaths, inmates have been denied access to medical care and treatment and have suffered further injury as a result. For example, in August 2009, Damon Poindexter, an inmate at Christian County Jail, was denied access to a medical doctor for ten days after repeated requests and complaints about a pain and swelling in his ankle to Jail employees and medical staff. On September 1, 2009, doctors informed the inmate that he had a torn Achilles tendon that required surgery and scheduled surgery for September 4, 2009. However, jail personnel denied the request for the inmate's surgery and released him from custody to avoid paying for the necessary surgery to repair the torn Achilles tendon. (Complaint, ¶29).

These actions demonstrate a pattern and practice of denying medical care to prisoners who need it. The plaintiff brought claims under Section 1983, and under state law.

### Argument

I. THE COURT SHOULD DENY THE MOTION TO STRIKE BECAUSE THE ALLEGATIONS WERE NECESSARY AND APPROPRIATE.

Rule 12(f) of the Federal Rules of Civil Procedure provides that "upon motion made by a party ..., the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Such motions are rarely brought and even more rarely successful. "Because striking a portion of a pleading is a drastic remedy, such motions are generally viewed with disfavor and are rarely granted." *Watkins & Son Pet Supplies v. Iams Co.,*

107 F.Supp.2d 883, 887 (S.D. Ohio 1999).  As another District Court in Kentucky wrote, "The application of this rule, which is in the discretion of the trial judge, should be resorted to only where the pleading contains such allegations that are obviously false and clearly injurious to a party to the action because of the kind of language used or that the allegations are unmistakably unrelated to the subject matter." *Pessin v. Keeneland Ass'n,* 45 F.R.D. 10, 13 (E.D. Ky. 1968).

This motion does not even approach that standard.  Not only are the allegations true, but they are necessary for the plaintiff to plead to comply with her burden.  Under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978), "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691.  Instead, the plaintiff must that the individual acted under a policy or custom.  *See Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994).  The policy or custom may be demonstrated by a "consistent and pervasive pattern" of similar acts over time.  *Berry,* 25 F.3d at 1346.

The allegations about other deprivations of medical care were not "immaterial" or "scandalous," then, but are highly relevant and required as an element of the plaintiff's case.  The plaintiff was required to plead them, on the pains of dismissal had she not done so.  The defendant apparently misunderstands the plaintiff's pleading obligations.

## Conclusion

For the reasons set forth above, the motion should be denied.

        Respectfully submitted,

        /s/ Kent Wicker
        Steven S. Reed
        Kent Wicker
        REED WICKER PLLC
        2100 Waterfront Plaza
        321 West Main Street
        Louisville, Kentucky  40202
        (502) 572-2500

        *Counsel for the Plaintiff*

## Certificate of Service

I hereby certify that a copy of the foregoing has been served upon all counsel of record electronically through the Court ECF system this 24th day of August, 2011.

        /s/ Kent Wicker
        Kent Wicker